**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

Alexandria Division

UNITED STATES OF AMERICA

v.

JUSTIN THOMAS LEE FORMAN,

*Defendant*.

Case No. 1:26-MJ-299

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO REVOKE THE DETENTION ORDER**

The United States of America, by and through undersigned counsel, opposes the motion of defendant, Justin Thomas Lee Forman (hereinafter the "defendant"), to revoke the detention order in this case.

The defendant is currently charged with receipt of a visual depiction involving the use of a minor to engage in sexually explicit conduct. The defendant, a former Stafford County Sheriff's Officer, was arrested after federal agents found multiple chats in the defendant's phone containing or acquiring child sexual abuse material (CSAM). At the time of this filing, the Federal Bureau of Investigation (FBI) has uncovered more than 2,000 images and videos of CSAM on the defendant's cell phone, most of which involve prepubescent minors. The FBI is also currently investigating allegations that the defendant had sexual intercourse with multiple minors in the past. For these reasons, and those set forth below, the government does not believe that the defendant has rebutted the statutory presumption that he be detained pending trial, and even if he has, the statutory factors the court must consider support a finding that no set or combination of conditions of his release would reasonably ensure the safety of the community.

## BACKGROUND

In June 2026, the FBI received information that the defendant made several payments in 2025 and 2026 to an identified website known to sell CSAM. While some of the transactions were successful, other payments failed due to suspicion of illicit activity.

On July 30, 2026, pursuant to search warrants authorized by the Honorable Ivan D. Davis (1:26-SW-635 through 637), the FBI searched the defendant's house, person, and electronic devices. Following an initial review of the defendant's cell phone, which was taken from his person during the search, federal agents found chats from 2023 and 2024 in an encrypted communications application that were related to CSAM.

In one chat, the defendant initiated the conversation and specifically requested over 1 terabyte of images and videos of "Kids + Teens (0-17);" he requested to pay via cryptocurrency. The defendant sent confirmation of payment and received approximately 30 links to download the material, some of which were tied to other encrypted platforms. In the second chat, there were more than 300 images and videos of CSAM, including videos involving infants.

During the search, and following *Miranda* and *Garrity* warnings, the defendant was voluntarily interviewed by the FBI. During which, the defendant told investigators that he used the dark web to view pornography and has viewed sites that contained sexually explicit material of minors. The defendant also made multiple false statements to the interviewing agents, including that he has never downloaded CSAM. Following the initial review of the defendant's device and the discovered CSAM, and separated in time from the interview, the defendant was arrested. A criminal complaint was signed shortly thereafter.

Following the conclusion of the search of the defendant's home, in total, the FBI has seized approximately 19 devices. The review of those devices is still ongoing. At the time of this filing, the government has reviewed approximately 50% of the defendant's cell phone that was seized

from his person. That review, thus far, has uncovered more than 2,000 images and videos of CSAM, a bulk of which includes prepubescent minors. This activity expands well beyond 2023 and 2024, including materials that are shown to be created well into 2026.

Following the defendant's arrest, the FBI received a tip from Victim-1 who alleged the defendant had sex with her when she was a minor. Victim-1 further reported that the defendant was physically and emotionally abusive to her over the course of years. Victim-1 told federal investigators that Victim-1 and the defendant started to engage in sexual intercourse while she was 16 and he was approximately 20-21 years old. She also stated the relationship began while she was a "Jr. member" of the same fire station that the defendant was a fulltime employee. Victim-1 further alleged the defendant had sexual relationships with other minors. One of the other named minors, who remains close friends with the defendant, denied any sexual relationship with the defendant.

Victim-1 reported this conduct to the Stafford County Sheriff's Office in or around 2021. The Stafford County Sheriff's Internal Affairs office conducted a very limited inquiry into the allegations and ultimately noted the defendant was "exonerated." Of note, their investigation relied heavily on the defendant's statement and a seemingly reversed inquiry on Victim-1. While the FBI has had this information for a short time, the FBI has substantiated some of Victim-1's claims, to include finding messages between Victim-1 and the defendant where Victim-1 discusses having sexual intercourse with the defendant while she was under the age of 18. The FBI continues to investigate these allegations and complete forensic reviews of the devices seized.

## PROCEDURAL HISTORY

On July 30, 2026, a criminal complaint was issued for the defendant charging him with receipt of a visual depiction involving the use of a minor to engage in sexually explicit conduct, in

violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). Dkt. 1. On July 31, 2026, the defendant made his initial appearance before the Honorable William B. Porter. Dkt 5. The defendant had his preliminary hearing and detention hearing on August 3, 2026, before the Honorable Lindsey R. Vaala. Dkt. 10. At the hearing, the defendant argued that he should be released. After an exhaustive and deliberate review of the facts and arguments by the government and defense counsel, the Court ultimately ordered the defendant be detained pending trial on the basis of danger to the community. Dkt. 11. The Court also found that probable cause existed to support the criminal complaint. *Id.* On September 1, 2026, the defendant filed his motion to revoke the detention order. Dkt. 16. A hearing is set for this motion on September 17, 2026. Dkt. 18.

## LEGAL FRAMEWORK

A defendant ordered detained by a United States Magistrate Judge may, by motion, seek amendment or revocation of his detention order. *See* 18 U.S.C. § 3145(b). "When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam) (citing *United States v. Rueben*, 974 F.2d 580, 585–86 (5th Cir. 1992)). The factors the Court must consider in evaluating release are set forth in 18 U.S.C. § 3142(g) and include:

1) the nature and circumstances of the offense charged;
2) the weight of the evidence against the person;
3) the history and characteristics of the person; and
4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

When determining if release is appropriate, the Court shall also take into account if the charged offense is a crime of violence. 18 U.S.C. § 3142(g)(1). A crime of violence, for purposes

of 18 U.S.C. § 3142 includes "any felony under chapter…110." 18 U.S.C. § (a)(4)(C). The charged offense in this matter, 18 U.S.C. § 2252, inarguably falls under Chapter 110.

Additionally, certain offenses provide a statutory presumption of detention, including any "offense involving a minor victim under section . . . 2252." 18 U.S.C. § 3142(e)(3)(E); see also Dkt. 1 (charging the defendant with such an offense). When a defendant rebuts that presumption, the government must prove by clear and convincing evidence that "no conditions other than detention will reasonably assure the safety of any other person and the community." *United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005) (unpublished). However, even if rebutted, the presumption "remains a factor to be considered among those weighed by the district court." *United States v. Jaramillo*, 2010 WL 11504275, at *2 (M.D.N.C. Dec. 17, 2010) (collecting cases).

For the reasons that follow, the Court should find, as did the Honorable Lindsey R. Vaala, that there are no conditions other than the defendant's continued detention that will reasonably ensure the safety of any other person and the community.

**ARGUMENT**

Any conditions of release, including those that involve a third-party custodian or electronic monitoring, are insufficient to ensure the safety of the community, and the defendant should continue to be detained pending trial. First, the charges and allegations mentioned herein exemplify the danger the defendant poses to the public. Second, the defendant has lived a double life for years, while breaching his position of trust as a police officer in the community. Third, the defendant has shown sophistication with technology, while trying to conceal his identity and technological footprint to victimize children. He should not be released.

**I. The defendant cannot rebut the presumption against release.**

Without belaboring the point, the government must highlight that the inclusion of a presumption of detention in the Bail Reform Act for the charged offense was deliberate,

intentional, and for good cause. Congress purposely imposed a presumption of detention for sexual exploitation offenses involving minors because these offenses inflict extraordinary harm and fuel a pervasive criminal market. This case falls precisely within the category such presumption was intended to control. Although during the detention hearing the magistrate judge found that the defendant rebutted the presumption in this case, the government submits that, in light of the updated factual landscape, the presumption cannot be rebutted by the defendant with any conditions of release, including those the defendant has proposed.

The defendant's proposed conditions of a third-party custodian and internet monitoring are insufficient because (1) the defendant has conducted a portion of the illicit activity in this matter while living with another family member and (2) his sophistication with technology, combined with his knowledge of law enforcement capabilities, allows him the unique ability to circumvent any controls, including internet monitoring.

During a portion of the defendant's illicit conduct, the defendant was residing with his brother, another sworn law enforcement officer. Despite living with someone whose job is to detect and enforce violations of the law, the defendant was able to conceal his illicit activity from his brother. The government raises this to highlight the defendant's ability to avoid detection, even from a skilled law enforcement officer. Accordingly, any third-party custodian would be insufficient to adequately ensure the defendant does not commit further crimes, not to mention remains in compliance with conditions of release.

Additionally, the defendant used the internet and sophisticated means to commit his crimes. Specifically, the defendant used end-to-end encrypted messaging applications, the dark web, and cryptocurrency to purchase and store materials exploiting minors, thereby avoiding detection by moderators and law enforcement for years. The defendant has shown knowledge and skills that

would equip him to commit further acts that victimize children despite any conditions of monitoring. The fact is that obtaining new electronics is cheap and easy, and nearly impossible for a third-party custodian to prevent or monitor. Simply put, it is not possible to monitor someone 24 hours a day outside of a jail; this is equally true for the defendant's mother, no matter how well-intentioned.

Accordingly, the government asks the court to deny the defendant's motion and find that he cannot rebut the presumption against release.

## II. Even if the defendant can rebut the presumption, the Section 3142(g) factors weigh strongly in favor of detention.

In consideration of the 18 U.S.C. § 3142(g) factors, there are no conditions other than detention that will reasonably ensure the safety of the community. Each of the statutory factors is addressed below.

*Nature and Circumstances of the Offense and Seriousness of Danger to the Public*

The nature and circumstances of the charged offense, and the seriousness of the danger to the community posed by the defendant's release are serious and weigh in favor of detention. The defendant is charged with receipt of child exploitation material, and the investigation continues to produce information and leads. Although the complaint included limited activity in 2023 and 2024, the government's investigation has shown illicit activity spanning an extended period, a large volume of CSAM, and sexually explicit materials involving minors of very young ages, to include babies.

Each time an image or video of such exploitation is viewed or disseminated, it inflicts direct and continued harm on the depicted victim and perpetuates a disgusting network of exploitive material involving children. The absence of alleged direct contact with the depicted minor does

not diminish the harm, nor does it diminish the danger to the community. This conduct poses a danger to the victim, other children, and the community – full stop.

The fact that Congress created not only a rebuttable presumption for the charged offense, but also specifically identified the offense as a crime of violence for purposes of detention, emphasizes the seriousness of the offense and the danger offenders pose to the public. The magistrate judge's concerns regarding the defendant's interest in materials with children of very young ages were grounded with this very danger.

*Weight of the Evidence*

The weight of the evidence for the charged offense in this case is extremely strong. The FBI's ongoing review of the defendant's main device, which is only approximately 50% complete at the time of this filing, has already uncovered more than 2,000 images and videos of CSAM. Additionally, in multiple chats on Telegram, the defendant requested or received CSAM, including hundreds of images and videos of prepubescent children. All of this evidence was seized pursuant to search warrants issued in this district. Although the warrants included biometric authorization, the FBI did not need to use biometrics to unlock the device because the defendant's pin was the same as the one he had set for his work phone, which also happened to be his date of birth.

In his motion, the defendant claims he was not provided *Miranda* or *Garrity* warnings prior to his interview and therefore will be pursuing motions to suppress. This is not only incorrect, but irrelevant as his interview was not a custodial event. In any event, even removing everything from the interview, there is almost no damage to the strength of the evidence in this case.

The fact, however, is the defendant was given *Miranda* and *Garrity* warnings before his interview. The defendant was also told several times throughout the interview that he was free to leave and that the interview had nothing to do with his employment. Notably, the government told

defense counsel such warnings were given to the defendant during this interview prior to the filing the motion at issue here. Any potential motions to suppress on these grounds would be unsupported by fact and law and wouldn't inflict any damage to the strong evidence in this case.

*History and Characteristics*

The conduct in this case makes one thing clear – the defendant is skillful in portraying a law-abiding citizen while committing egregious crimes he was sworn to detect and enforce. The defendant's lack of criminal history is not an accurate reflection of his history and characteristics; it is emblematic of a secret life of exploiting minors and a blatant disregard for the law. Furthermore, it is reflective of his sophistication and ability to conceal his illicit activity, all weighing heavily for detention.

As the magistrate judge noted in the detention hearing, the defendant has created a double life and breached his position of trust. While the defense has highlighted that he was a decorated law enforcement officer, this is simply not true. More accurately, the defendant is a former law enforcement officer who concealed his repulsive sexual interest in young children being continuously exploited. He was the subject of multiple allegations of misconduct while on the force, including those by Victim-1 who reported he had sexual intercourse with her while she was a minor, asked her to conceal the relationship, and physically abused her throughout their relationship. Of interest, Victim-1 was a "Jr. member" of the fire department, while the defendant was in a superior role, including a trainer, when the two began their relationship. This demonstrates a potentially alarming exploitation of a subordinate who was also a child.

During the detention hearing in this matter, the government proffered concerns raised by a member of the Stafford County Sheriff's Office that the defendant may pose a risk of self-harm.

The government remains concerned about this potential but does not have, nor has uncovered, any additional information relating to that concern.

For these reasons, the government does not believe the defense's proposition of a third-party custodian adequately addresses the potential danger to the community, and there are no set of conditions of release that may reasonably ensure the safety of the community.

**CONCLUSION**

The defendant's illicit conduct in this case and behavior leading up to his arrest is extremely serious. He poses a danger to the safety of the community if released, no matter how strict the conditions. Accordingly, the government respectfully requests that the Court deny the defendant's motion and order the defendant continue to be detained pending trial.

Respectfully submitted,

Todd. W. Blanche
Attorney General

Theophani K. Stamos
First Assistant United States Attorney

by: /s/

Jacob A. Mercer
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Ave.
Alexandria, Virginia 22314
Phone: 703-299-3780
Email: Jacob.Mercer@usdoj.gov